IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUAN ORTIZ, | : | |
|     Petitioner, | : | |
| | : | **CIVIL ACTION NO.:** |
| v. | : | |
| | : | NO: 12-CV-1209 |
| SUPERINTENDENT | : | |
| DEBRA SAUERS, et al., | : | |
|     Respondents. | : | |

## MEMORANDUM

**Jones, J.**                                                                                                                 **April 8, 2016**

      Now pending before the court is the supplemental report and recommendation of Magistrate Judge M. Faith Angell, (Doc. No. 33), recommending dismissal of petitioner's amended 28 U.S.C. §2254 petition on the sole remaining claim that the evidence presented at trial was insufficient to sustain his convictions for kidnapping, indecent assault, and rape. On September 21, 2015, petitioner filed timely an objection to the report and recommendation, (Doc. No. 43), arguing that Judge Angell erred in deferentially reviewing the decision of the Pennsylvania Superior Court when the Pennsylvania Superior Court wrongly applied clearly established Federal law. After a *de novo* review of those portions of the record to which petitioner objects, the court will **OVERRULE** the objection and **ADOPT** the report and recommendation. The petition will be **DENIED** and **DISMISSED** in its entirety. Because no reasonable jurist could find this ruling debatable, **A CERTIFICATE OF APPEALABILITY SHALL NOT ISSUE**.

## STANDARD OF REVIEW

      When timely objections are filed to the report and recommendation of a magistrate judge, the district court must review *de novo* those portions of the report and recommendation to which objection is made. 28 U.S.C. §636(b)(1). If there are no objections to the report and recommendation or when reviewing those portions of the report and recommendation to which no objections are directed, the court should, as a matter of good practice, "satisfy itself that there

1

is no clear error on the face of the record in order to accept the recommendation." FED. R. CIV. P. 72(b), advisory committee notes; *see also Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. §636(b)(1)(C). Alternatively, the district court "may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

## **DISCUSSION**

Petitioner objects to the report and recommendation on the ground that Judge Angell wrongly deferred to the decision of the Pennsylvania Superior Court regarding the sufficiency of the evidence.[1] (Doc. No. 43, at 3.) Petitioner argues that the Pennsylvania Superior Court was not entitled to deference because it violated clearly established Federal law when it viewed the sufficiency of the evidence from its own perspective rather than the perspective of "any rational trier of fact" as required by *Jackson v. Virginia*, 443 U.S. 307 (1979). (Doc. No. 43, at 2-3.) In *Jackson v. Virginia*, the Supreme Court held that a federal habeas court must consider, not whether there was *any* evidence to support a state court conviction, but whether there was *sufficient* evidence for a rational trier of fact to find guilt beyond a reasonable doubt. *Id.* at 320-21.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) precludes an application for a writ of habeas corpus from being granted "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. 2254(d). Therefore, deference is required when the claim was adjudicated on the merits in the state court proceeding, regardless of whether that adjudication was in violation of clearly established Federal law. *Thomas v. Horn*, 570 F.3d 105, 113 (3d Cir. 2009). As a result, the critical question is whether the claim was adjudicated on the merits, which occurs when the state court has made a decision that (1) finally resolves the claim, and (2) resolves the claim based upon its substance, rather than on procedural grounds. *Id.* at 115.

---

[1] Petitioner does not object to Judge Angell's conclusion that it was reasonable for the Pennsylvania Superior Court to find that the evidence was sufficient. Even if Petitioner did make such an objection, based on the overwhelming facts considered by the Superior Court, it was reasonable to conclude that, when viewed in a light most favorable to the prosecution, the evidence was sufficient for a rational trier of fact to find Petitioner guilty beyond a reasonable doubt as to each element of each offense.

In this case, the Superior Court of Pennsylvania found that Petitioner had waived his specific challenges to the sufficiency of the evidence presented at trial by failing to raise them before the trial judge. *Commonwealth v. Ortiz*, No. 1943 Middle District Appeal 2005, slip op. at 3-4 (Superior Court, December 1, 2006); Commonwealth's Appendix at A232-233. Despite this initial finding, the Superior Court nonetheless thoroughly addressed the merits of Petitioner's claim:

> Even if we were to find these issues preserved for our review, [petitioner] would not be entitled to relief. The testimony offered by the victim was sufficient to support each conviction. We offer a summary of the relevant evidence because the facts of this case are necessary to our review of [petitioner's] sentencing claims. The victim testified that at the time of the attack, she was a 20-year-old college student, living with her brother and sister-in-law; and at about 5:30 a.m., she received a phone call from her father telling her to meet him outside because he wanted to have sex. (Notes of testimony, 2/16/05 at 88-91, 132-133.) [Petitioner] threatened that if she did not meet him, he would kill her, her mother and her brothers. (Id. at 91.) She told him "no" many times and expected he was gone when she went outside to warm up her car in preparation for leaving for class. (Id. at 92.) She returned to the house and then again to the car to leave. She entered her car and then saw [petitioner] attempting to enter the passenger side door. (Id.) She tried to lock the car, but [petitioner] was able to get in and he instructed her to drive.
>
> At a stop sign, [petitioner] slapped his daughter with an open hand, turned off the car, took away the keys, and pulled his daughter into the passenger's seat by her arm. (Id. at 95-97.) He went around to the driver's seat and began to drive, instructing his daughter not to say anything to anyone. (Id. at 98.) [Petitioner] continued to drive until he reached a park. He drove up a walking trail into the woods, where it was snow covered and desolate. (Id. at 101.) In a rough voice, [petitioner] told his daughter to take off her pants and when she replied "no", he shook his fist at her. (Id. at 103-105, 148.) The victim was crying and [petitioner] slapped her again and repeated his instruction to take her pants off. [Petitioner] again told the victim that she should not tell anyone because he would kill her, her brothers, and her mother, and that the death of her mother would be her fault. (Id. at 108.)
>
> The victim began to unbutton her pants, and [petitioner] pressed a button to recline the passenger seat. (Id. at 105.) [Petitioner] pulled the victim's pants off from one leg and to the knee of the other one and took off his own pants to his knees. He tried to kiss his daughter on the mouth, and she shook her head, again saying "no." He pulled down the victim's underpants and proceeded to have sexual intercourse with her while grabbing both of the victim's arms above her head and pressing all his body weight upon her. (Id. at 106-107.)
>
> The victim quickly pulled her pants back on and got out of the car, ready to run, but she was frozen and scared. [Petitioner] pulled her back in the car and again began driving around. Despite the fact that [petitioner] stated that he

3

intended for his daughter to spend the whole day with him, he eventually left her with the car so that she could go to school. The victim ultimately went to the hospital where a rape kit test was administered. Testimony was offered that DNA testing from a vaginal swab of sperm obtained from the victim matched a DNA profile of a blood sample from [petitioner].

While [petitioner] claims that there was insufficient evidence of forcible compulsion to support the rape and indecent assault convictions, an examination of the above-recited facts indicates otherwise. The victim was slapped and threatened. Despite her protestations, [petitioner] held her hands above her head and with the weight of his body forced himself upon her. "Forcible compulsion is an act, including physical force as well as moral, psychological or intellectual force, used to compel a person to engage in sexual intercourse against that person's will. *Commonwealth v. Riley*, 643 A.2d 1090, 1091 (Pa. Super. 1994). The evidence offered by the victim, viewed in the light most favorable to the Commonwealth as the verdict winner, *see Commonwealth v. Spotz*, 563 Pa. 269, ____, 759 A.2d 1280, 1283 (2000), was sufficient to establish that [petitioner] engaged in his prohibited conduct by forcible compulsion.

In his attack of his kidnapping conviction, [petitioner] argues that the evidence presented at trial was insufficient to prove that he removed the victim a substantial distance or confined her for a substantial period.

> The offense of kidnapping is defined as:
> 2901. Kidnapping
> (a) Offense defined. – A person is guilty of kidnapping if he unlawfully removes another a substantial distance under the circumstances from the place where he is found, or if he unlawfully confines another for a substantial period in a place of isolation, with any of the following intentions: . . . . .
> > (2) To facilitate commission of any felony or flight thereafter.
> > (3) To inflict bodily injury on or to terrorize the victim or another.
>
> 18 Pa.C.S.A. §2901(a).

We find sufficient evidence of record to conclude that [petitioner] did remove his victim a substantial distance from her home with the purpose of committing a sexual assault upon her. [Petitioner] forces his way into the victim's car, instructing her to drive, and later forced the victim out of the driver's seat. [Petitioner] then drove the victim to a park and proceeded to drive the vehicle down a walking path to an isolated location where he could perpetrate his attack. There was ample evidence to support the kidnapping charge.

*Commonwealth v. Ortiz*, No. 1943 Middle District Appeal 2005, slip op. at 4-8 (Superior Court, December 1, 2006); Commonwealth's Appendix at A233-A237. Because the Superior Court (1) finally resolved Petitioner's sufficiency of the evidence claims and (2) resolved those claims

through a thorough evaluation of the merits, the decision of the Superior Court is appropriately entitled to deference. Petitioner argues that because the Superior Court is not entitled to deference because "that adjudication resulted in a decision that was contrary to or involved an unreasonable application of clearly established Federal law, as determined by the United States Supreme Court in *Jackson v. Virginia*, supra." (Obj. 3.) Petitioner misunderstands the statute. A State Court adjudication that is contrary to or unreasonably applies clearly established Federal law is still entitled to deference, but the petition may nonetheless be granted based on the grounds that there was such a violation of clearly established Federal law. As a result, although Petitioner's sole objection that Judge Angell wrongly deferred to the State court is without merit, this Court will interpret Petitioner's objection generously and further consider whether the Superior Court in fact reached a decision that was contrary to or unreasonably applied clearly established Federal law.

Petitioner claims that the Pennsylvania Superior Court reached a decision that was contrary to clearly established Federal law when it allegedly decided the sufficiency of the evidence from their own perspective rather than from the perspective of "any rational trier of fact." (Obj. 3.) Petitioner bases this claim entirely on the fact that the Superior Court stated "*[w]e find* sufficient evidence of record. . ." (Obj. 3.) Petitioner's argument in its entirety reads:

> By evaluating the evidence against Petitioner from its own perspective, as opposed to the perspective of "any rational trier of fact," the Pennsylvania Superior Court applied a rule that is "substantially different" from the rule delineated in Jackson. Indeed, by use of the phraseology "any rational trier of fact," it is clear that the Jackson Court intended a sufficiency of the evidence claim to be evaluated from the perspective of a "jury" with individual sensibilities and the ability to employ logical reasoning. The Pennsylvania Superior Court did not review Petitioner's sufficiency of the evidence claim from that perspective. Instead, Petitioner's claim was reviewed, in direct contravention of the teachings of Jackson, from the perspective of a collective panel of appellate court judges, which omitted any independent determination from a rational, sensible or logical standpoint. See, *Jackson*, 443 U.S. at 318-19 (explaining that the sufficiency of the evidence inquiry does not permit a reviewing court to "ask itself whether *it* believes that the evidence at trial established guilt beyond a reasonable doubt . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt").

(Obj. 4.) Petitioner argues that evidence deemed sufficient by "a collective panel of appellate court judges" necessarily omits "any independent determination from a rational, sensible or logical standpoint." (Obj. 4.)

5

At the outset, the Court notes that the use of "we find" does not indicate that the State court failed to apply the appropriate standard of review. Federal courts must presume that "state courts know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Therefore, a federal court only reviews a state court application of federal law for "reasonableness," even when the state court failed to cite to Supreme Court cases, or even demonstrate an awareness of Supreme Court precedent. See *Early v. Packer*, 537 U.S. 3, 7-8 (2002); *Priester v. Vaughn*, 382 F.3d 394, 398 (3d Cir. 2004) ("as long as the reasoning of the state court does not contradict relevant Supreme Court precedent, AEDPA's general rule of deference applies"). Furthermore, it is well established that the standard of review for sufficiency of the evidence claims employed by the Pennsylvania state courts is aligned with federal requirements. *Eley v. Erickson*, 712 F.3d 837, 848-49 (3d Cir. 2013). In this case, the sufficiency of evidence standard applied by the Superior Court—whether the evidence viewed in the light most favorable to the Commonwealth as the verdict winner was sufficient to establish the challenged elements of the various crimes—is not contrary to *Jackson*. *Commonwealth v. Ortiz*, No. 1943 Middle District Appeal 2005, slip op. at 5 (Superior Court, December 1, 2006); Commonwealth's Appendix at A236. Therefore, this Court presumes that the Superior Court knew and followed the law. This presumption is especially compelling in a case where the federal and state standards are identical and the Superior Court espoused the proper standard. Aside from concluding with the traditional phrase "we find . . .,"[2] which is used time and time again by appellate courts, there is no evidence to suggest that the Superior Court misapplied federal law.

---

[2] The Court notes that is unconvinced that even if the Superior Court failed to apply the standard of "any rational trier of fact," there would be any prejudice to Petitioner. The Supreme Court warning against judges viewing the evidence from their own perspective and instead viewing it from the perspective of "*any* rational trier of fact," actually lowers the standard for the sufficiency of the evidence. The Supreme Court likely expected judges to be even more discerning in evaluating evidence and reminded judges that the evidence need not convince an experienced judge but only "any rational trier of fact" when viewed in the light most favorable to the prosecution. In fact, the Supreme Court in *Jackson* cites specifically to *Woodby v. Immigration & Naturalization Serv.*, 385 U.S. 276, 282 (1966), where the Supreme Court previously recognized that "judicial review is generally *limited* to ascertaining whether the evidence relied upon by the trier of fact was of sufficient quality and substantiality to support the rationality of the judgment." The Supreme Court in *Jackson* likewise cites to its prior decision in *Johnson v. Louisiana*, 406 U.S. 356, 362-63 (1972), where the Court found:
> Jury verdicts finding guilty beyond a reasonable doubt are regularly sustained even though the evidence was such that the jury would have been justified in having a reasonable doubt, even though the trial judge might not have reached the same conclusion as the jury, and even though appellate judges are closely divided on the issue whether there was sufficient evidence to support a conviction.

*Johnson v. Louisiana*, 406 U.S. 356, 362-63 (1972) (internal citations omitted). As a result, even assuming simply from the use of the words "we find" that the Superior Court in fact failed to view the evidence from the perspective any rational trier of fact, such a review would have been more favorable to Petitioner.

Based on the foregoing, the Court will **OVERRULE** petitioner's objection and **ADOPT** the report and recommendation. The petition will be **DENIED** and **DISMISSED** in its entirety. Because no reasonable jurist could find this ruling debatable, **A CERTIFICATE OF APPEALABILITY SHALL NOT ISSUE**.

           **BY THE COURT:**

            /s/ C. Darnell Jones, II
           **C. Darnell Jones, II  J.**